IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| PARAMVIR SINGH a/k/a Perry Singh | : | NO. 12-2209 |
| | : | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**ROBERT F. KELLY, SR. J.**                                                                 **OCTOBER 1, 2012**

      Currently before this Court is Plaintiff, AAMCO Transmissions, Inc.'s (AAMCO), Motion for Preliminary Injunction. After a hearing on the Motion before this Court on September 21, 2012, and after careful consideration of AAMCO's Brief in Support of the Motion, Defendant Paramvir Singh's ("Singh") Response, and AAMCO's Reply, this Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

      1. On April 25, 2012, AAMCO filed a Complaint against Singh alleging breach of a franchise agreement. (Compl. ¶¶ 14-16.)

      2. AAMCO is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania. (Id. ¶ 1.) Singh is an adult individual who is a citizen of the State of Washington with a principal place of business at 18012 Bothell-Everett Hwy., Suite #4, Bothell, WA 98012. (Id. ¶ 2.)

      3. AAMCO filed a Motion for Preliminary Injunction on April 30, 2012 seeking to enjoin Singh from operating a transmission business at the above address. (Doc. No. 3.) Singh filed a Response to the Motion on June 27, 2012. (Doc. No. 9.) Thereafter on July 25, 2012,

Singh's counsel filed a Motion to Withdraw and requested a stay for sixty days for Singh to retain new counsel. (Doc. No. 13.) On August 7, 2012, we granted the Motion to Withdraw, but denied the stay and ordered Singh to "obtain new counsel forthwith." (Doc. No. 15.) AAMCO filed a Reply to Singh's Response on August 14, 2012. (Doc. No. 16.)

    4. On September 21, 2012, a hearing was held before this Court on AAMCO's Motion for Preliminary Injunction. AAMCO presented the testimony of Brian O'Donnell ("O'Donnell"), its Senior Vice President of Operations, in support of its Motion. Singh did not appear at the hearing, nor did he request a continuance or inform the Court that he would not be present at the hearing.

    5. Since 1963, AAMCO has been engaged in the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada. (Pl.'s Ex. P-1, O'Donnell Affidavit at ¶ 3.)[1]

    6. On June 17, 1997, AAMCO and Singh entered into a franchise agreement ("Franchise Agreement") in which Singh was authorized to use and did use the name "AAMCO" in connection with the operation of an automotive center located at 13040 Bellevue-Redmond, Road, Bellevue, WA (the "Center"). (Id. ¶ 5.)

    7. Section 19.2 of the Franchise Agreement, entitled "Covenant Not-to-Compete," states in relevant part:

> For a period of two (2) years after the termination of this
> Agreement, Franchisee shall not directly or indirectly engage in the

---

[1] Plaintiff's exhibits were offered at the September 21, 2012 hearing and we cite to them accordingly.

>   transmission repair business within a radius of ten (10) miles of the
>   former center or any other AAMCO Center.  The two (2) year
>   period shall not begin to run until Franchisee commences to
>   comply with all obligations stated in this section 19.2(b).

(Pl.'s Mot. for Prelim. Inj., Ex. A.)

    8.  The Covenant Not-to-Compete further states in pertinent part:

>   Franchisee acknowledges that because the business of AAMCO
>   and the strength of the AAMCO name and trademark, the
>   restrictions contained in this section 19.2 are reasonable and
>   necessary to protect the legitimate business interests of AAMCO
>   and that any violation of these restrictions will result in irreparable
>   injury to AAMCO.  Therefore, Franchisee acknowledges that, in
>   the event of such violation, AAMCO shall be entitled to
>   preliminary and permanent injunctive relief and damages.

(Id.)

    9.  As a franchisee, AAMCO disclosed to Singh its propriety systems, information and trade secrets for operating a successful automotive repair business which AAMCO had developed over its history.  (Pl.'s Ex. P-1, O'Donnell Aff. at ¶ 6.)

    10.  From April 21, 1997, through June 2, 1997, Singh attended AAMCO's intensive training class in Pennsylvania.  Singh was provided with AAMCO's operating and technical manuals, national customer lists and specialized software.  Singh also received periodic in-field training, as well as access to AAMCO's national customer hot line.  (Id. ¶¶ 7-8.)

    11.  In September 2010, after conducting an audit of the Center, AAMCO discovered widespread and continuing under reporting of sales at the Center in an attempt by Singh to avoid payment of franchise fees which were calculated as a percentage of sales.  (Id. ¶ 9.)

    12.  Thereafter, on or about July 15, 2011, in consideration of AAMCO's agreement to

release Singh from the substantial debt he owed to AAMCO, Singh sold the Center to AAMCO's affiliate company. On this same date, the Franchise Agreement was terminated. (Id. ¶ 10.)

13. Under the Franchise Agreement, the earliest date on which Singh's Covenant Not-to-Compete could expire is July 15, 2013. (Id.)

14. In violation of the Covenant Not-to-Compete in the Franchise Agreement, Singh is currently operating a transmission repair business at 18012 Bothell-Everett Hwy., Suite #4, Bothell, Washington, under the name "Mill Creek Transmissions and Auto Repair" (the "Competing Business") which is within ten miles of at least two AAMCO Transmission Centers.[2] (Pl.'s Ex. P-1, O'Donnell Aff. at ¶ 14.)

15. In advertising the Competing Business on his website,[3] Singh makes reference to his former tenure at the AAMCO Repair Center in Bellevue, Washington. Singh indirectly references AAMCO in a derogatory manner stating that he "ran a successful national franchise for 15 years in Bellevue and decided to go independent to better serve my customers." (Pl.'s Ex. P-5.) He also makes another indirect derogatory reference to AAMCO on his website stating that "Mill Creek Transmissions & Automotive is your Honest, Independent alternative to dealerships and high-priced national chain stores that don't appreciate your business." (Id.)

16. An owner of several AAMCO centers in the Puget Sound area of Washington contacted AAMCO to complain that Singh's Competing Business is unfairly competing with his franchise businesses. (Pl.'s Ex. P-1, O'Donnell Aff. at ¶ 22.)

---

[2] A map of the ten mile radius surrounding Mill Creek Transmissions indicates that it is located within ten miles of three AAMCO centers in Lynnwood, Shoreline, and Kirkland, Washington. (Pl.'s Ex. P-3.)

[3] Singh's website can be found at www.millcreektransmissions.com.

17. Singh continues to operate a transmission and general repair business in the Puget Sound area using his knowledge of AAMCO, its unique system of doing business and other confidential information. (Id. ¶ 27.)

## **CONCLUSIONS OF LAW**

1. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000 and because AAMCO and Singh are citizens of different states. See 28 U.S.C. § 1332.

2. The Franchise Agreement's choice of law provision requires the application of Pennsylvania law. Neither party challenges the application and enforceability of this provision. Therefore, this Court will consider whether the non-compete clause is enforceable under Pennsylvania law. (Ex. P-2, Franchise Agreement at § 21.1.)

3. A court must examine the following four factors when faced with a request for a preliminary injunction: (1) plaintiff's likelihood of success on the merits; (2) irreparable harm; (3) the extent to which the defendant will be irreparably harmed if the injunction issues; and (4) the public interest. Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 803 (3d Cir. 1998).

4. "A court will issue a preliminary injunction '[o]nly if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief.'" Rita's Water Ice Franchise Co., LLC, No. 10-4297, 2011 WL 101694, at *6 (E.D. Pa. Jan. 11. 2011) (citing Optician's Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990)).

5. With regard to the first factor, we find that it is very likely that AAMCO would

succeed on the merits of its action to enforce Singh's Covenant-Not-to-Compete.

6. Under Pennsylvania law, a non-compete covenant is enforceable if: (1) the covenant relates to either a contract for the sale of goodwill or other subject property; (2) the covenant is supported by adequate consideration; and (3) the application of the covenant is reasonably limited in both time and territory.  Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 210 (Pa. 1976).

7. Neither party disputes that the first two requirements are fulfilled, since it is well-settled that a non-compete clause in a franchise agreement relates to the sale of goodwill and since the Franchise Agreement is supported by adequate consideration on both sides.  See Athlete's Foot Mktg. Assocs. v. Zell Inv., Inc., No. 00–186, 2000 WL 426186, at *9–10 (W.D. Pa. Feb 17, 2000) (citing Piercing Pagoda, 351 A.2d at 210).

8. Under Pennsylvania law, covenants not to compete are to be strictly construed since they are "a partial restraint upon the free exercise of trade." Hayes v. Altman, 266 A.2d 269, 271 (Pa. 1970); see also Maaco Franchise, Inc., No. 09-4548, 2010 WL 1644278, at *4 (E.D. Pa. Apr. 20, 2010).

9. A court's interpretation of a contract is a matter of law.  Roman Mosaic & Tile Co.v. Thomas P. Carney, Inc., 729 A.2d 73, 77 (Pa. Super. 1999).  The court's duty when it interprets a contract is to "ascertain the intent of the parties as manifested by the language of the written agreement." Glen–Gery Corp. v. Warfel Constr. Co., 734 A.2d 926, 929 (Pa. Super. 1999) (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). "The intention of the parties is paramount and the court will adopt an interpretation which under

all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." Bethlehem Steel Corp. v. MATX, Inc., 703 A.2d 39, 42 (Pa. Super. 1997).

10.  The Franchise Agreement, including the Covenant-Not-to-Compete, is not ambiguous. The Covenant clearly states the intention of the parties that "[f]or a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO Center." (Pl.'s Mot. for Prelim. Inj., Ex. A.)

11.  The non-compete covenant is reasonable in time. The non-compete clause lasts for two years and applies only to the transmission repair business. See Rita's Water Ice Franchise Co., 2011 WL 101694, at *7 (two-year non-compete covenant deemed reasonable); see also Piercing Pagoda, 351 A.2d at 212 (granting injunctive relief to enforce a three-year restraint on competition); Novus Franchising, Inc. v. Taylor, 795 F. Supp. 122, 128 (M.D. Pa. 1992) (finding that the two-year time duration on the restrictive covenant at issue was reasonable).

12.  The ten-mile geographic scope of the Covenant Not-to-Compete is also reasonable. See Sidco Paper Co. v. Aaron, 351 A.2d 250, 256-57 (Pa. 1976) (affirming injunctive relief to enforce non-compete covenants with portions of three states and all of the District of Columbia); Piercing Pagoda, 351 A.2d at 212 (thirty-mile radius deemed reasonable); Wainwright's Travel Service, Inc. v. Schmolk, 500 A.2d 476 (Pa. Super. 1985) (affirming injunctive relief to enforce non-compete covenants within employee's primary business area of five states); Maaco Enters., Inc. v. Bremner, No. 98-2727, 1998 WL 669936, at *1 (E.D. Pa. Sept. 29, 1998) (ten-mile radius

deemed reasonable); Sparks Tune-Up, Inc. v. White, No. 89-664, 1989 WL 4132, at *1 (E.D. Pa. Apr. 18, 1989) (ten-mile radius deemed reasonable); Am. Mutual Liab. Inc. Co. v. Kosan, 635 F. Supp. 341, 344-45 (W.D. Pa. 1986), aff'd 817 F.2d 751 (3d Cir. 1987) (insurance agent restricted from competing with former employer insurance firm within fifty-mile radius pursuant to agreement).

    13.  We find that the Covenant-Not-to Compete is enforceable under Pennsylvania law because all three factors have been met under Piercing Pagoda, 351 A.2d at 212.

    14.  In light of the facts of this case, we next find that AAMCO has met the second factor in Pappan Enter., Inc., in that it has suffered irreparable harm.  143 F.3d at 803.

    15.  Irreparable injury results when a former franchisee competes against a franchisor in breach of a restrictive covenant contained in the parties' franchise agreement.  See e.g. Rita's Water Ice Franchise Co., 2011 WL 101694, at *6; Maaco Enters.,Inc. v. Bremner, 1998 WL 669936, at *6 ; Rita's Water Ice Franchise Corp. v. DBI Invest. Corp., No. 96-306, 1996 WL 165518 (E.D.  Pa. Apr. 8, 1996).

    16.  "The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 484–85 (3d Cir. 2000). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Pappan Enters., Inc., 143 F.3d at 805.

    17.  If AAMCO is unable to enforce the Covenant-Not-to-Compete contained in the Franchise Agreement, the values of all of its franchises are lowered.  See Rita's Water Ice

Franchise Corp., 1996 WL 165518, at *5. This inability could induce other franchisees to violate their franchise agreements and to use the goodwill established by the operation of its AAMCO franchise to establish a competing business. Rita's Water Ice Franchise Co., 2011 WL 101694, at *6.

18. The Court appreciates that a preliminary injunction will force Singh to cease his transmission operations and this will have financial repercussions for Singh. However, we note that Singh will be able to continue in the auto repair business, with the exception of doing transmission work.

19. The Court finds that the harm to AAMCO that will result if the Court does not enjoin Singh from operating a competing business outweighs any harm to Singh. Singh was aware of any potential harm when he signed the Franchise Agreement and then opened a competing business following the termination of the Franchise Agreement. The harm to Singh "is of [his] own making." Rita's Water Ice Franchise Corp., 1996 WL 165518, at *5. A balancing of the hardships is necessary to ensure that the injunction will not harm the violator of the restrictive covenant more than a denial of the injunction would harm the movant. In this case, enforcement of the requested preliminary injunctive relief will impose no undue hardship on Singh, any harm to Singh having been brought about by his own actions in continuing to operate in breach of his Covenant-Not-to-Compete. Id.; see also Athlete's Foot Mktg., Assoc., 2000 WL 426186, at *11.

20. Any hardship which results is not "undue" because Singh is merely having to live up to the terms of his Franchise Agreement and the Covenant-Not-to-Compete. See e.g., Maaco Enters., Inc., 1998 WL 669936, at *5 (balancing of the hardships of the parties favors the

9

enforcement of the restrictive covenant).

21. We find that the "public interest" is served by granting the injunction. Papan Enters., Inc., 143 F.3d at 803.

22. The public interest is also served by ensuring the contractual rights and obligations of the parties are upheld. Rita's Water Ice Franchise Co., 2011 WL 101694, at *9. "[T]he public interest is served by . . . maintaining the viability of franchise systems." Maaco Franchise, Inc., 2010 WL 1644278, at *4; see also AAMCO Transmissions, Inc. v. Dunlap, No. 11-4009, 2011 WL 3586225, at *9-10 (E.D. Pa. Aug. 16, 2011).

23. Since AAMCO has shown a reasonable probability of success on the merits, that irreparable harm will result if the relief sought is not granted, that the harm it faces outweighs the possible harm to Singh, and that granting relief is in the public interest, we will grant AAMCO's Motion for a Preliminary Injunction. Singh, his agents, servants, employees and those persons in active concert or participation with him, are enjoined from operating a transmission repair business at 18012 Bothell-Everett Hwy., Suite #4, Bothell, WA 98012, or anywhere else within ten (10) miles of an AAMCO Repair Center.

24. In accordance with Federal Rule of Civil Procedure 65(c), the Court will require AAMCO to post a bond in the amount of $5,000.

We, therefore, enter the following Judgment.